G. Lynn Shumway (011714)
shumway@carsafetylaw.com
**SHUMWAY LAW PLLC**
4647 N. 32nd Street, Suite 125
Phoenix, Arizona  85018-3345
Telephone:  602.795.3720
Facsimile   :  602.795.3728

Brent Ghelfi (011491)
BrentGhelfi@GhelfiLawGroup.com
**GHELFI LAW GROUP, PLLC**
4647 N. 32nd Street, Suite 125
Phoenix, Arizona  85018-3345
Telephone   :  602.318.3935

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

# TUCSON DIVISION

| | |
|---|---|
| **Sariah Elam,** an individual, and **Celestial Elam**, an individual<br><br>            Plaintiffs,<br><br>    vs.<br><br>**Toyota Motor Corporation,** a foreign corporation;<br>**Toyota Motor Sales USA, Inc.,** a California corporation;<br><br>            Defendants. | No. _____<br><br>**COMPLAINT**<br><br><br>**Jury Trial Demanded** |

Plaintiffs Sariah Elam and Celestial Elam, for their Complaint against Defendants Toyota Motor Corporation and Toyota Motor Sales USA, Inc., allege as follows:

1

## **Parties**

**1.** Plaintiff Sariah Elam is an individual and resident of Pima County, Arizona. Sariah was born in December of 2001.

**2.** Plaintiff Celestial Elam is an individual and resident of Pima County, Arizona. Celestial was born in September of 2000.

**3.** At all relevant times, Defendant Toyota Motor Corporation (hereinafter "TMC") was and is a corporation organized and existing under the laws of the nation of Japan with its principal place of business in Japan.

**4.** Defendant TMC transacts business in the State of Arizona and is a resident of the State of Arizona for purposes of personal jurisdiction, and is subject to the jurisdiction and venue of this Court.

**5.** Toyota Motor Corporation designs, develops, tests, manufactures and uses its captive, wholly owned corporations and subsidiaries to distribute automobiles, passenger cars, SUVs and light trucks for sale and use in the State of Arizona.

**6.** Toyota Motor Corporation makes specific design choices to comply with the requirements to sell cars, SUVs and light trucks in Arizona and for use in Arizona after cars are sold in other states and then driven to and used in Arizona.

**7.** At all relevant times, Defendant Toyota Motor Sales, U.S.A., Inc. (hereinafter "TMS") was and is a corporation organized and existing under the laws of the State of California with its principal place of business in Plano, Texas.

**8.** Upon information and belief, Defendant TMS merged with Toyota Motor Distributors, Inc. in 1995, and TMS is the surviving company.

**9.** Upon further information and belief, TMS is a wholly-owned subsidiary of Defendant Toyota Motor Corporation. Collectively in this Complaint, Toyota Motor Corporation and Toyota Motor Sales USA, Inc., shall be referred to as "Toyota."

**10.** Defendant TMS transacts business in the State of Arizona and maintains a registered agent in the State of Arizona.

**11.** Defendant TMS transacts business in the State of Arizona, is a resident of the State of Arizona for purposes of personal jurisdiction, and is subject to the jurisdiction and venue in Maricopa County Superior Court.

**12.** At all relevant times, Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A. Inc., designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, approved, repaired, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold Toyota vehicles to the consuming public in the State of Arizona and all 50 states of the United States.

**13.** Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A. Inc., selected safety features for, designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, approved, repaired, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold the subject 2009 Toyota Venza, in which the unreasonably dangerous and defective design that gave rise to this lawsuit caused the injuries to the Plaintiffs that are alleged in this complaint.

**14.** Upon further information and belief, neither Toyota Motor Corporation nor Toyota Motor Sales USA, Inc., are residents of the State of Arizona, nor are any of either entity's primary shareholders.

**15.** Defendant Toyota Motor Corporation is the manufacturer of the vehicle at issue in this matter, a 2009 Toyota Venza, VIN 4T3BK11A99U018697 (hereinafter, the "Vehicle" or the "Venza").

**16.** Upon further information and belief, Toyota Motor Corporation and Toyota Motor Sales USA, Inc., placed the Vehicle into the stream of commerce in Arizona.

**17.** Whenever reference is made in this Complaint to any act of TMC and/or TMS, such allegation shall mean that Chrysler did the acts alleged in the Complaint through its officers, directors, employees, agent and/or representatives while they were acting within the actual or ostensible scope of their authority.

## Jurisdiction and Venue

**18.** This matter arises from Toyota's choice to not equip the Vehicle with collision avoidance systems and Toyota's choice to use unreasonably dangerous and defective rear outboard seating positions occupant restraint systems which separately or in combination caused both Plaintiffs serious injuries.

**19.** Toyota's choice to not equip the Vehicle with collision avoidance systems and Toyota's choice to use unreasonably dangerous and defective rear outboard seating positions occupant restraint systems separately or in combination caused the Plaintiffs' serious paralyzing injuries.

**20.** The two Plaintiffs suffered their serious injuries during an automobile collision that occurred in Pima County on February 20, 2017, resulting in significant personal injuries and economic damages to Plaintiffs.

**21.** Plaintiffs Sariah Elam and Celestial Elam are citizens and residents of the State of Arizona.

**22.** Defendant Toyota Motor Corporation is a citizen and resident of the country of Japan.

**23.** Defendant Toyota Motor Sales USA, Inc., is a citizen and resident of California and/or Texas.

4

**24.** The parties are diverse and the amount in controversy exceeds $75,000 and, as such, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**25.** Thus, this Court has jurisdiction of the parties and subject matter, and venue is proper in this Court.

## **Factual Background**

### **1. The Vehicle**

**26.** This is a products liability matter in which Plaintiffs' injuries were suffered during an automobile collision that occurred on February 20, 2017.

**27.** There were two vehicles involved in the crash, the Vehicle and a 2013 Ford utility truck.

**28.** This is the 2013 Ford truck:



**29.** Toyota Motor Corporation manufactured the Vehicle, the 2009 Toyota Venza.

5

**30.** This photograph demonstrates an undamaged version of the 2009 Toyota Venza at issue:



**31.** Toyota did not offer any type of forward collision avoidance technology system in the 2009 Toyota Venza as either standard or optional equipment.

**32.** Toyota did not offer any forward collision warning system, collision imminent braking, dynamic braking support, or any other similar system on the Vehicle.

**33.** The absence of this life-saving technology is a subject of this case.

### 2. Forward Collision Avoidance Technology

**34.** Rear-end collisions, such as occurred here, are the most common form of automobile collision or accident, generally accounting for approximately one third of automobile accidents in the United States. *NTSB Special Investigation Report, "Vehicle- And Infrastructure Based Technology for Prevention of Rear-End Collisions (May 2001)*, at 1.

6

35. According to a 2015 study by the National Transportation Safety Administration (NTSB), rear-end collisions account for "almost half of all two-vehicle crashes." *2015 NTSB Report*, at. 6.

36. The primary cause of rear-end collisions is driver distraction. *Id*. "87 percent of rear-end crashes involved some degree of driver inattention." *Id*.

37. In an [oral statement given on June 8, 2015](), NTSB Chairman Hart stated that there were 1.7 million rear end collisions in 2012—including the present collision—resulting in more than 1,700 deaths and 500,000 injures.

38. Forward collision warning ("FCW") was initially developed in the early to mid-1990s.

39. FCW is a simple technology in which a driver receives some form of alert when a danger, such as a stopped or slow-moving vehicle, is detected ahead.

40. Some trucks had some form of FCW installed by the mid-1990s, nearly twenty-five years ago.

41. By the late 1990s, Eaton VORAD, a supplier of FCW components in the 1990s, was actively marketing its FCW system to truck companies throughout the United States, with "over 2 billion miles of over-the-road experience" by the summer of 1999. *2001 NTSB Special Investigation Report,* at 22.

42. Automatic emergency braking ("AEB") is an automated follow-up to forward collision warning.

43. AEB has two related sub-technologies. The first is dynamic brake support (DBS), which activates if a driver brakes before an impending collision but does not brake

7

hard enough to prevent the collision. DBS automatically supplements the driver's braking in an effort to avoid the crash.

44. A second AEB technology is crash imminent braking (CIB). If a driver does not brake at all with a potential impending crash, CIB automatically applies the vehicle's brakes to slow or stop the car, avoiding the crash or reducing its severity.

45. FCW, DBS, and CIB are collectively referred to as Forward Collision Avoidance Technologies ("FCAT").

46. Federal agencies have urged carmakers to adopt FCAT technology since 1995.

47. In 1995, following a five-fatality event investigation, the NTSB encouraged the prompt adoption of FCW, issuing numerous recommendations to advance it. *2001 NTSB Special Investigator Report*, at 5-6 (summarizing 1995 recommendations).

48. In 1996, the National Highway Traffic Safety Administration (NHTSA)—a regulatory agency within the Department of Transportation—conducted its first cost/benefit study of crash avoidance systems, including FCW, noting that such a study was appropriate at the time because of "their technical maturity and the availability of system prototypes." NHTSA concluded that such systems should be installed if their cost was anything less than $1,500. "Preliminary Assessment of Crash Avoidance Systems Benefits," *NHTSA Benefits*

49. The cost of FCW in 1996 was less than $1,500.

50. Upon information and belief, suppliers were charging automakers less than $500 for complete FCW systems in 1996 and 1997.

51. In 2001, the NTSB issued another seminal report regarding forward collision avoidance technologies, urging both other governmental agencies and auto/truck

8

manufacturers to implement this technology as rapidly as possible. *2001 NTSB Special Investigation Report*.

52. The report referenced in the last paragraph above was prompted by a fatal truck/car collision near Moriarty, New Mexico, in January of 1999. *Id*. at 7-8.

53. The NTSB prepared two simulations related to the collision near Moriarty, New Mexico, the first showing what actually happened in the collision (which can be viewed here), and the second showing how the truck driver easily avoided the collision with FCW (this animation viewable here). *2001 NTSB Special Investigator Report,* at 27.

54. In the report referenced in paragraph 51 above, the NTSB made a specific plea to automakers:

> Develop and implement, in cooperation with the National Highway Traffic Safety Administration, the Federal Highway Administration, the Intelligent Transportation Society of America, and the truck and motorcoach manufacturers, a program to inform the public and commercial drivers on the benefits, use, and effectiveness of collision warning systems and adaptive cruise control.

*2001 NTSB Special Investigator Report*, at 39.

55. Upon information and belief, Toyota never developed or implemented "a program to inform the public and commercial drivers on the benefits, use, and effectiveness of collision warning systems and adaptive cruise control."

56. In March 2006 NHTSA provided automakers with another comprehensive risk/benefit study of forward collision avoidance technologies, demonstrating their benefits. "Evaluation of an Automotive Rear-End Collision Avoidance System," National Highway Transportation Administration (March 2006).

9

57.     In 2008, NHTSA included FCW in its New Car Assessment Program ("NCAP"). When adding forward collision avoidance technology to its NCAP, NHTSA declared forward collision avoidance to be a "mature" technology. "Consumer Information; New Car Assessment Program," National Highway Traffic Safety Administration, Fed.Reg., 73 Fed.Reg. 40016 (July 11, 2008).

58.     In January 2012, NHTSA issued a final rule, adding a vehicle's addition of FCW to its New Car Assessment Program (NCAP). 76 Fed. Reg. 45453 (July 29, 2011) (49 C.F.R. 575.302).

59.     In his June 8, 2015, statement, NTSB Chairman Hart noted of the 1,700 deaths and 500,000 injuries from rear-end collisions, "more than 80% could have been prevented or mitigated with optimal forward collision technology."

60.     In 2015, the NTSB revisited the issue of forward collision avoidance technology systems due to the "lack of progress:"

> The National Transportation Safety Board (NTSB) has an extensive history of investigating rear-end crashes and has encouraged technological countermeasures since 1995. To date, the NTSB has issued 12 recommendations pertaining to this safety issue….
>
> Due to a lack of progress in the implementation of NTSB recommendations intended to mitigate or prevent rear-end crashes, the recent technological advancements in collision avoidance technologies, and the continued prevalence of rear-end crashes, the NTSB is revisiting the topic of rear-end crash prevention.

*2015 NTSB Special Report*, at 6

### 3.     Toyota does not include any forward collision avoidance technology on its 2009 Toyota Venza

10

**61.** By the mid-1990s, Toyota had developed a forward collision avoidance technology system, using sensors to detect objects that posed a threat to the vehicle.

**62.** By 2003, Toyota was installing forward collision warning systems in some of its vehicles manufactured and sold in Japan. These systems included both forward collision warning and automatic emergency braking.

**63.** By 2004, Toyota had expanded the number of models and trim levels that had forward collision avoidance technology systems for Toyota vehicles intended for the Japanese market.

**64.** For model year 2009, Toyota included forward collision avoidance as an optional system on Prius automobiles marketed and sold in the United States.

**65.** The Vehicle at issue in this matter is the 2009 Toyota Venza.

**66.** Toyota did not offer any form of forward collision avoidance technology on the 2009 Toyota Venza, either standard or optional.

### 4. The Collision

**67.** On February 20, 2017, at approximately 4:40 p.m., Ralene Elam was driving the Vehicle southbound on Interstate 19, traveling in the number one lane.

**68.** Ralene Elam's daughters, Plaintiffs Celestial and Sariah Elam, were seated in the rear seat of the Vehicle at the time of the collision.

**69.** They were restrained in their rear seat safety belts at the time of the February 20, 2017 collision.

**70.** Ralene Elam did not recognize that traffic in front of her had come to a stop, and rear-ended a stopped vehicle, the 2013 Ford utility truck.

**71.** This photograph depicts the damage to the Vehicle as a result of the collision:



**72.** Plaintiffs Celestial and Sariah Elam were both seriously and permanently injured in the collision.

**73.** Both Celestial and Sariah were rendered paraplegic, and both are likely to remain so for the rest of their lives.

**74.** As the Vehicle was not equipped with any type of forward collision avoidance technology, there was neither a warning nor automatic emergency braking prior to the collision.

**75.** If the Vehicle had been equipped with forward collision warning, an alert would have sounded prior to the collision and Ralene Elam would have been able to avoid the collision. At the very least, Ralene Elam would have been able to engage in sufficient braking or steering to mitigate the severity of the collision.

**76.** If the Vehicle had been equipped with automatic emergency braking (in addition to forward collision warning), the subsequent braking or steering would have prevented the collision. At the very least, the braking or steering would have been sufficient to mitigate the severity of the collision.

**77.** Although Celestial and Sariah Elam were seated in the rear seat of the Vehicle, they were among the most seriously injured in the collision. Upon information and belief, the rear outboard occupant restraint systems failed to supply appropriate occupant protection, including:

(1) The restraint system failed due to deformation in the floor and brackets that attach the seats to the Vehicle's floor;

(2) The rear seat belt system was not equipped with an adequate seat bottom ramp;

(3) The rear seat outboard safety belt systems were not equipped with pretentioning features, such as were installed in the front driver and passenger seats; and

(4) The rear seat outboard safety belt systems were not equipped with load limiting features, such as were installed in the front driver and passenger seats.

**78.** Had the rear seat outboard safety belt systems not failed as set forth above, Plaintiffs Celestial and Sariah Elam would have not sustained the life-changing and permanents injuries that they sustained in the Collision.

## Claims For Relief

## Count 1

## Strict Liability – Design Defect

**79.** Plaintiffs incorporate the foregoing paragraphs as fully set forth herein.

**80.** Defendants are liable to Plaintiff because of the defective and unreasonably dangerous design of the 2009 Toyota Venza, specifically, Toyota's failure to install technologically and financially feasible forward collision avoidance technologies.

**81.** Defendants are further liable to Plaintiff because of the defective and unreasonably dangerous design of the 2009 Toyota Venza's rear outboard occupant restraint systems, as set forth above.

**82.** The benefits of a vehicle equipped with the forward collision warning outweighs any harmful characteristics and/or consequences of a vehicle so equipped.

**83.** The benefits of a vehicle equipped with the automatic emergency braking outweighs any harmful characteristics and/or consequences of a vehicle so equipped.

**84.** The Vehicle failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonable manner.

**85.** The benefits of a vehicle with the rear outboard occupant restraint system designs, as set forth above, are outweighed by the harmful characteristics and/or consequences of a vehicle with that rear outboard occupant restraint system designs.

**86.** The rear outboard occupant restraint systems in the Vehicle failed to perform as safely as an ordinary consumer would expect them to perform when used in an intended or reasonable manner.

14

**87.** As a direct result of Toyota's dangerous and defective design of the 2009 Toyota Venza, Plaintiffs suffered serious, life-altering, and permanent injuries, as well as economic loss.

**Count 2**

**Negligence**

**88.** Plaintiffs incorporate the foregoing paragraphs as fully set forth herein.

**89.** Defendants owed the consuming public and those coming into contact with its vehicles a duty to design reasonably safe vehicles.

**90.** Defendants knew, or reasonably should have known, that (1) rear-end collisions kill and/or injure hundreds of thousands of persons on United States roadways annually; and (2) that distracted drivers are a leading cause of rear-end collisions.

**91.** Defendants knew, or reasonably should have known, that forward collision avoidance technologies are not designed to protect solely the drivers of the equipped vehicle, but also to protect the vehicle's occupants and the occupants in other vehicles that may be at risk from a rear-end collision.

**92.** With this knowledge, Defendants breached their duty of care by failing to make their already-developed forward collision warning technology standard safety equipment on the Vehicle.

**93.** With this knowledge, Defendants breached their duty of care by failing to make their already-developed automatic emergency braking technology standard safety equipment on the Vehicle.

15

**94.** With this knowledge, Defendants further breached their duty of care by failing to install automatic emergency braking technology on the Vehicle.

**95.** Defendants further knew that the design of the rear outboard occupant restraint systems in the Vehicle were unreasonably dangerous and defective.

**96.** Defendants further breached their duty of care by designing the rear outboard occupant restraint systems in this unreasonably dangerous and defective manner.

**97.** As a direct result of Defendants' negligent design of the 2009 Toyota Venza, Plaintiffs suffered serious, life-altering, and permanent injuries, as well as economic loss.

### **Prayer For Relief**

**WHEREFORE**, Plaintiffs pray for damages against Defendants as follows:

**1.** For special damages, including medical expenses and costs;

**2.** For general damages, including future costs of care, past and future lost wages and economic opportunities, loss of enjoyment of life, pain and suffering, and emotional trauma.

**3.** For taxable costs and pre- and post-judgment interest to the extent permitted by law.

**4.** For other relief as the Court deems just and proper.

16

## Jury Demand

Plaintiffs respectfully request a jury on all issues in this matter triable to a jury.

DATED this 22nd day of July, 2020.

SHUMWAY LAW PLLC

/s/ G Lynn Shumway_____
G. Lynn Shumway

and

GHELFI LAW GROUP PLLC
Brent Ghelfi

*Attorneys for Plaintiffs*